AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

(1) one Motorola 48MP Quad Pixel smartphone in a black cell phone case and (2) one blue TCL flip phone, located at the DEA Richmond Office

)
)
)
)
)
)

Case No.  3:23-sw- 92

JUN 15 2023

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Eastern___ District of ___Virginia___ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. § 841(a)(1) | Possession with the Intent to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit in Support of an Application for Search Warrant

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Reviewed by AUSA/SAUSA:

Ellen V. Hubbard, SAUSA
*Printed name and title*

Matthew Rubright, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  JUNE 15, 2023

/s/ MRC
Mark R. Colombell
**United States Magistrate Judge**
*Judge's signature*

City and state:  Richmond, Virginia

Honorable Mark R. Colombell
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN THE MATTER OF THE SEARCH OF (1)
one Motorola 48MP Quad Pixel smartphone
in a black cell phone case and (2) one blue
TCL flip cell phone seized from Jerrell
Stanley BUGG and maintained at the DEA
Richmond District Office, 111 Greencourt
Road, Henrico, VA 23228

Case No. 3:23-sw- 92

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, Special Agent Matthew Rubright, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Sections 841(a)(1) and 846. I am a Special Agent with the Drug Enforcement Administration, and have been since April 29, 2022. I have attended and graduated from the sixteen-week DEA Basic Agent Training Academy at Quantico, Virginia. At the DEA training academy, I have received training in methods and techniques utilized by illegal drug traffickers to avoid detection by law enforcement, illicit drug identification, surveillance techniques, arrest procedures, undercover operations, safe and effective execution of search warrants, evidence procedures, among other topics.

2.     Since graduating from the DEA Academy, I have participated in enforcement

1

operations consisting of surveillance, execution of arrest and search warrants, undercover operations, confidential source management, and evidence processing that have resulted in the seizure of illicit narcotics and firearms, and the arrest and indictment of illegal drug traffickers in the Commonwealth of Virginia. I have attended T-III intercept training through the DEA Washington Division and participated in T-III investigations. Additionally, I have attended DEA Basic Cyber Investigator Course which covered topics including, but not limited to, social media investigation and search warrants, darknet marketplace investigation, Crypto-currency investigation and open source intelligence collection methods. I have testified under oath in criminal matters in front of the Grand Jury. I have been involved in investigations that have resulted in the arrests and convictions of numerous individuals responsible for narcotics trafficking. I have been involved in complex, cross-jurisdictional investigations into large-scale narcotics trafficking organizations. As a result, I have experience in debriefing criminal defendants, witnesses, and other people with direct experience in the methods used to distribute controlled substances.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other sworn law enforcement officers. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

4.      The property to be searched are: (1) **one Motorola 48MP Quad Pixel smartphone in a black cell phone case** and (2) **one blue TCL flip cell phone** seized from Jerrell Stanley BUGG, aka: Terrell Stanley BUGG ("BUGG"), on May 18, 2023 (hereinafter referenced as the SUBJECT DEVICES).

2

5.      The SUBJECT DEVICES were seized on May 18, 2023, by Chesterfield County Police Department ("CCPD") Detective Jeffrey Godsey, from BUGG subsequent to BUGG's probable cause arrest.  The SUBJECT DEVICES are currently stored at the DEA Richmond District Office in the Eastern District of Virginia, located at 111 Greencourt Road Richmond, VA 23228.

6.      The applied-for warrant would authorize the forensic examination of the SUBJECT DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

## TECHNICAL TERMS

7.      Based on my training and experience, I use the following technical terms to convey the following meanings:

a.      **Smartphone:** A portable personal computer with a mobile operating system having features useful for mobile or handheld use.  Smartphones have become commonplace in modern society in developed nations.  While the functionality of smartphones may vary somewhat from model to model, they typically possess most if not all of the following features and capabilities: 1) place and receive voice and video calls; 2) create, send and receive text messages; 3) voice-activated digital assistants (such as Siri, Google Assistant, Alexa, Cortana, or Bixby) designed to enhance the user experience; 4) event calendars; 5) contact lists; 6) media players; 7) video games; 8) GPS navigation; 9) digital camera and digital video camera; and 10) third-party software components commonly referred to as "apps."  Smartphones can access the internet through cellular as well as Wi-Fi ("wireless fidelity") networks.  They typically have a color display with a

graphical user interface that covers most of the front surface of the phone and which usually functions as a touchscreen and sometimes additionally as a touch-enabled keyboard.

      b.     **Wireless telephone:** A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

      c.     **Digital camera:** A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

4

d.     **IP Address**: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the internet must be assigned an IP address so that internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.     **Internet**: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8.     Based on my training, experience, and research, I know that the SUBJECT DEVICES have capabilities that allow one or both to take pictures, send and receive text messages, record and store voice messages, access the internet and serve as a smartphone.

## PROBABLE CAUSE

9.     Based on my training and experience, what I have learned from other law enforcement officers, and the facts set forth in this affidavit, I submit that there is probable cause that the SUBJECT DEVICES contain evidence regarding violations of Title 21 U.S.C. §§ 841(a)(1) and 846.

10.     On May 18, 2023, at approximately 10:00 P.M., during a judicially authorized Title III investigation of wire and electronic communications over a federally targeted telephone ("TT1"), an individual later identified as Jerrell Stanley BUGG, born July 2, 1978, was heard

speaking to Cleveland Lamont PARSON ("PARSON"), the known user of TT1. During their conversation, PARSON informed BUGG, "them jaunts was at the crib." Based on the Title III investigation, my training and experience, and intelligence developed over several months investigating PARSON and his drug trafficking associates, BUGG being one of those associates, I believed the preceding comment by PARSON meant that PARSON had several kilograms of cocaine at his residence which were waiting for BUGG to come and pick up. BUGG then informed PARSON, he (BUGG) was presently driving to PARSON's residence.

11.    At approximately 10:20 P.M., surveillance observed BUGG arrive at PARSON's residence, located at 310 North Radford Drive, Hopewell, VA. BUGG was driving a black Ford F250 registered to Jerrell S. BUGG, which he parked on the street on the garage side of PARSON's residence. BUGG then walked into the garage and out of view. After several minutes, BUGG was seen leaving PARSON's garage while carrying what appeared to be a black bag. BUGG got into the driver's seat of his Ford truck and then drove out of the area. BUGG was then followed by mobile surveillance units from Chesterfield County Police Department (CCPD) narcotics detectives and DEA Taskforce Officer (TFO) Jeffrey Godsey.

12.    As surveillance was conducted on BUGG, the Hopewell Police Department (HPD) was contacted by TFO Godsey for assistance with an anticipated traffic stop to be conducted on BUGG. At approximately 10:38 P.M., an HPD marked unit initiated a traffic stop on BUGG near 300 North 6th Avenue, Hopewell, VA. BUGG was the sole occupant of the Ford truck. During the traffic stop, and while the responding Officer was trying to interview BUGG, BUGG was speaking to an unknown male on one of the SUBJECT DEVICES, the Motorola 48MP Quad Pixel smartphone. The unknown male appeared to be giving BUGG advice on how to respond to the Officer conducting the traffic stop. BUGG finally complied with the Officer's command to exit

the truck. At this time TFO Godsey, who is a CCPD K9 handler, conducted a free air screen of BUGG's Ford truck. TFO Godsey's K9 gave a positive alert for the presence of an illegal drug in BUGG's Ford truck. When TFO Godsey instructed the responding HPD Officer to place BUGG into handcuffs, BUGG pushed the Officer away and fled from the scene on foot. After a short chase, BUGG was apprehended. BUGG was still holding one of the SUBJECT DEVICES, the Motorola 48MP Quad Pixel smartphone, when he was apprehended. TFO Godsey then conducted a probable cause search of BUGG's truck and found three (3) kilogram sized bricks of suspected cocaine and the second SUBJECT DEVICE, the blue TCL flip cell phone. The blue TCL flip cell phone was recovered from the center console of BUGG's truck.

13. Based on the events leading up to BUGG's arrest and my knowledge, training, and experience, I believe BUGG was in contact with PARSON to purchase three (3) kilograms of suspected cocaine, on May 18, 2023. Based on my training and experience, the events leading up to BUGG's arrest, and the quantity of cocaine seized from BUGG's Ford truck, BUGG was in possession of a quantity of cocaine commensurate with distribution, not with personal use. Based on the Title III interception of TT1, BUGG's behavior during the traffic stop, and my knowledge, training, and experience, I believe BUGG uses the SUBJECT DEVICES to further his drug trafficking activities not only with PARSON, but with other conspirators as yet unknown. In order for this illegal drug trafficking enterprise to operate, I believe BUGG used the SUBJECT DEVICES to communicate with his co-conspirators to traffic narcotics and to prevent detection by law enforcement.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

7

internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

15.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICES because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how

a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.       Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire mediums, that might expose many parts of the SUBJECT DEVICES to human inspection in order to determine whether they are evidence described by the warrant.

17.    *Manner of execution.* Because this warrant seeks only permission to examine the SUBJECT DEVICES that are already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18.     I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the SUBJECT DEVICES described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

Matthew Rubright
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on the 15ᵗʰ day of June 2023.

_____
UNITED STATES MAGISTRATE JUDGE

_____
/s/ MRC
Mark R. Colombell
United States Magistrate Judge

10

## ATTACHMENT A

1.    The property to be searched are: (1) **one Motorola 48MP Quad Pixel smartphone in a black cell phone case** and (2) **one blue TCL flip cell phone** seized from Jerrell Stanley BUGG, aka: Terrell Stanley BUGG ("BUGG"), on May 18, 2023 (hereinafter referenced as the SUBJECT DEVICES).

2.    The SUBJECT DEVICES were seized on May 18, 2023, by Chesterfield County Police Department ("CCPD") Detective Jeffrey Godsey and are currently stored at the DEA Richmond District Office in the Eastern District of Virginia, located at 111 Greencourt Road Richmond, VA 23228.

3.    This warrant authorizes the forensic examination of the SUBJECT DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

1

## **ATTACHMENT B**

1.      All records on the SUBJECT DEVICES described in Attachment A that relate to violations of Title 21 U.S.C. §§ 841(a)(1) and 846 relating to the distribution of controlled substances, including:

a.  Any and all address books, names and lists of names and addresses of contacts;

b.  Any and all diaries, notebooks, notes, and other records reflecting physical contacts;

c.  Evidence of who used, owned, or controlled the SUBJECT DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondences;

d.  Evidence of software that would allow others to control the SUBJECT DEVICES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

e.  Evidence of the lack of such malicious software;

f.  Evidence of the attachment to the SUBJECT DEVICES of other storage devices or similar containers for electronic evidence;

g.  Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT DEVICES;

h.  Evidence of the times the SUBJECT DEVICES were used;

i.  Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT DEVICES;

j.  Records of or information about Internet Protocol addresses used by the SUBJECT

1

DEVICES;

k. Records of, or information about, the SUBJECT DEVICES' internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

2. Contextual information necessary to understand the evidence described in this attachment.

3. Evidence of user attribution showing who used or owned the SUBJECT DEVICES at the time the things described in this warrant occurred, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.